**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **YOUSEF ALHINDI,** ***individually and on behalf of all others similarly situated,***<br><br>**Plaintiff,**<br>**v.**<br><br>**SANITAS USA, INC., MEHARRY HEALTH NETWORK, P.C., and GUIDEWELL-SANITAS I, LLC,**<br><br>**Defendants.** | **Case No. 1:25-cv-22910** |

**DEFENDANTS' CORRECTED JOINT MOTION TO COMPEL ARBITRATION AND COMPLIANCE WITH THE PARTIES' AGREED DISPUTE RESOLUTION PROCESS AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

FACTUAL BACKGROUND ..... 4

A. Plaintiff's Claims Arise Out of and Relate to the mySanitas Healthcare Application and Agreement, Which Plaintiff Incorporates into the Complaint. ..... 4

B. Plaintiff Created an Account in the mySanitas Healthcare Application and Acknowledged and Agreed to the Agreement to Access the Patient Portal Giving Rise to His Claims. ..... 5

LEGAL STANDARD ..... 7

ARGUMENT ..... 8

I. The Court Should Enforce the Agreement's Consultation and Mandatory Mediation Provisions and Dismiss This Case Because Plaintiff Failed to Comply with Any of the Agreement's Contractual Dispute Resolution Processes, Which Are Conditions Precedent to Arbitration. ..... 8

II. The Court Should Compel Arbitration Because the Parties Have a Valid Agreement to Arbitrate and Agreed to Delegate the Issue of Arbitrability to the Arbitrator. ..... 9

A. The Agreement Is a Valid Agreement to Arbitrate. ..... 10

B. Any Gateway Dispute as to Arbitrability Under the Agreement or Enforceability of the Agreement Is for the Arbitrator to Decide. ..... 12

III. The Court Should Compel Arbitration Because Plaintiff's Complaint Asserts Disputes That Are Subject to Mandatory Arbitration Under the Clear and Unambiguous Terms of the Parties' Agreement ..... 13

A. The Agreement's Mandatory Arbitration Clause Is Valid and Binding. ..... 14

B. Plaintiff's Claims Are Within the Scope of the Arbitration Clause. ..... 14

C. Defendants Have Not Waived Their Right to Arbitration. ..... 16

CONCLUSION ..... 18

REQUEST FOR HEARING ..... 18

CERTIFICATE OF GOOD FAITH CONFERENCE ..... 18

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*3–J Hospitality, LLC v. Big Time Design, Inc.*,
No. 09-61077-CIV, 2009 WL 3586830 (S.D. Fla. Oct. 27, 2009) ..........9

*Airbnb, Inc. v. Doe*,
336 So. 3d 698 (Fla. 2022)..........2, 12

*Arbea v. Itemp, Inc.*,
No. 24-80376-CIV, 2024 WL 5078273 (S.D. Fla. May 20, 2024)..........8, 9

*AT&T Techs. v. Communs. Workers of Am.*,
475 U.S. 643 (1986)..........15

*Babcock v. Neutron Holdings, Inc.*,
454 F. Supp. 3d 1222 (S.D. Fla. 2020) ..........8

*Bachewicz v. JetSmarter, Inc.*,
No. 18-CV-62570, 2019 WL 1900332 (S.D. Fla. Apr. 29, 2019) (S.D. Fla. Apr. 29, 2019) (Bloom, J.)..........11

*Bazemore v. Jefferson Cap. Sys., LLC*,
827 F.3d 1325 (11th Cir. 2016) ..........10

*Bedgood v. Wyndham Vacation Resorts, Inc.*,
88 F.4th 1355 (11th Cir. 2023) ..........17

*Bhim v. Rent-A-Ctr., Inc.*,
655 F. Supp. 2d 1307 (S.D. Fla. 2009) ..........8

*Brosnan v. Dry Cleaning Station Inc.*,
No. C-08-02028 EDL, 2008 WL 2388392 (N.D. Cal. June 6, 2008) ..........9

*In re Checking Acct. Overdraft Litig.*,
856 F. App’x 238 (11th Cir. 2021) ..........12

*Creative Tile Mktg., Inc. v. SICIS Int’l. S.r.L.*,
922 F. Supp. 1534 (S.D. Fla. 1996) ..........7

*Darling’s v. Nissan North America, Inc.*,
117 F. Supp. 2d 54 (D. Me. 2000) ..........9

*Davis v. Prudential Sec., Inc.*,
59 F.3d 1186 (11th Cir. 1995) ..........7

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....................13, 16

*Falvo v. Atl. Specialty Ins. Co.*,
No. 8:24-CV-01412-WFJ-AEP, 2025 WL 278022 (M.D. Fla. Jan. 23, 2025)....................16

*Gaudreau v. My Pillow, Inc.*,
No. 6:21-CV-1899-CEM-DAB, 2022 WL 3098950 (M.D. Fla. July 1, 2022) ....................17

*Healy v. Honorlock Inc.*,
609 F. Supp. 3d 1294 (S.D. Fla. 2022) ....................11

*iDoc Holdings, Inc. v. Goethals*,
No. 21-21540, 2021 WL 2895635 (S.D. Fla. July 9, 2021) (Bloom, J.) ....................13

*In Vitacost.com*, *Inc. v. McCants*,
210 So. 3d 761 (Fla. Dist. Ct. App. 2017) ....................10, 11

*Int'l Bhd. of Elec. Workers Sys. Council U-4 v. Fla. Power & Light Co.*,
627 F. App'x 898 (11th Cir. 2015) ....................15

*Jackson v. Shakespeare Found., Inc.*,
108 So. 3d 587 (Fla. 2013)....................15, 16

*Lambert v. Austin Ind.*,
544 F.3d 1192 (11th Cir. 2008) ....................13

*Machado v. Lab. Ready Se., Inc.*,
No. 1424234CIVLENARDGOOD, 2015 WL 6829061 (S.D. Fla. Nov. 6, 2015) ....................17

*Massage Envy Franchising, LLC v. Doe*,
339 So. 3d 481 (Fla. Dist. Ct. App. 2022) ....................11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*,
473 U.S. 614 (1985)....................7

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022)....................17

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....................13, 15

*Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*,
686 F. Supp. 2d 1318 (S.D. Fla. 2010) *aff'd*, 433 F. App'x 842 (11th Cir. 2011) ....................14

*Noshirvan v. Couture*,
No. 2:23-CV-1218-JES-KCD, 2025 WL 1769669 (M.D. Fla. June 26, 2025) ....................4

*Paladino v. Avnet Computer Techs., Inc.*,
134 F.3d 1054 (11th Cir. 1998) ....................13

*Perry v. Thomas*,
482 U.S. 483 (1987) ....................8

*Sapp v. Warner*,
141 So. 124 (Fla. 1932) ....................11

*Seifert v. U.S. Home Corp.*,
750 So. 2d 633 (Fla. 1999) ....................13, 15

*Shearson/Am. Express Inc. v. McMahon*,
482 U.S. 220 (1987) ....................7

*Shotts v. OP Winter Haven, Inc.*,
86 So. 3d 456 (Fla. 2011) ....................13

*Tatum v. X Corp.*,
733 F. Supp. 3d 453 (E.D. N.C. 2024) ....................4

*Temple v. Best Rate Holdings LLC*,
360 F. Supp. 3d 1289 (M.D. Fla. 2018) ....................11

*Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*,
432 F.3d 1327 (11th Cir. 2005) ....................2, 12

**Statutes**

Electronic Communications Privacy Act,
Pub. L. No. 99-508, 18 U.S.C. § 2511, *et seq* ....................14

Federal Arbitration Act
Pub. L. 68-401, 9 U.S.C. § 4 ....................7, 8, 13, 16

Florida Deceptive and Unfair Trade Practices Act,
Fla. Stat. § 501.201, *et seq.* ....................14

**Other Authorities**

AAA Commercial Arbitration Rules ....................2, 12

Federal Rules of Civil Procedure 12(b)(1) ....................1, 8

Local Rule 7.1 ....................1, 18

Defendants Sanitas USA, Inc. ("Sanitas USA") and Guidewell-Sanitas I, LLC ("Guidewell-Sanitas") (collectively, "Defendants") move the Court for an order compelling Plaintiff to comply with the parties' contractual dispute resolution process and thereafter to submit his claims to arbitration pursuant to Fed. R. Civ. P. 12(b)(1) and Local Rule 7.1 and to dismiss the case ("Motion")[1], stating as follows:

## PRELIMINARY STATEMENT

Plaintiff Yousef Alhindi ("Plaintiff") asserts various claims against Defendants arising out of the alleged interception, disclosure, or misuse of his personally identifiable information ("PII") or protected health information ("PHI") when Plaintiff was logged into the mySanitas Healthcare Application (the "App"). As part of Plaintiff's registration for the App, Plaintiff acknowledged he had read and agreed to the App's Terms and Conditions of Use (the "Agreement"). That Agreement includes the parties' agreement: (1) to use best efforts to settle any "Dispute" (as broadly defined by the Agreement) between the parties through good faith consultation; (2) in the event the parties do not resolve their Dispute within 30 days through this consultation process, to mediate in good faith according to the Commercial Mediation Procedures of the American Arbitration Association ("AAA"); and (3) in the event the parties do not resolve their Dispute through mediation, to submit their Dispute to binding confidential arbitration administered by the AAA in accordance with its Commercial Arbitration Rules. Plaintiff did not follow any step of this agreed process. Instead, in contravention of his express agreement, he commenced a class action in this Court. Accordingly,

[1] Due to a clerical error, Defendants' motion to dismiss was erroneously filed twice, *see* ECF Nos. 26 and ECF Nos 27. ECF No. 26 was intended to be Defendant's Motion to Compel Arbitration along with an accompanying declaration (ECF. No. 26-1). This Motion and memorandum reflect the corrected pleading. Defendants are concurrently filing a motion to strike the erroneous filing in ECF No. 26 and substitute it with the instant filing.

Defendants move to compel Plaintiff's compliance with the parties' contractual dispute resolution process, to dismiss this case, and to compel binding arbitration.

As a threshold matter, the Court should compel Plaintiff to submit to the parties' contractual dispute resolution process, which requires consultation and mediation prior to the commencement of any arbitration proceeding. Because Plaintiff has not complied with that process, the Court should dismiss Plaintiff's Complaint to compel compliance.

Even if Plaintiff had complied with the dispute resolution process, which he did not, this Court should compel arbitration. There is no dispute as to the existence of the valid Agreement to arbitrate, and any gateway question of arbitrability under the Agreement is for the arbitrator to decide. Plaintiff agreed to confidentially arbitrate his claims before the AAA when he checked a box and agreed to the Agreement, which contains a valid and enforceable agreement to arbitrate. Because Plaintiff physically manifested his assent to the App in a "clickwrap agreement," the arbitration agreement is valid and enforceable.

That ends the inquiry. The parties' arbitration clause expressly designates the AAA as the administrator overseeing the parties' arbitration and adopts the AAA's Commercial Arbitration Rules. Those rules, in turn, provide for the arbitrator to determine "his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." S*ee* AAA Commercial Arbitration Rules, Jurisdiction, R-7(a).[2] By incorporating the AAA's Commercial Arbitration Rules into their agreement, the parties have contractually agreed to delegate the question of arbitrability to the arbitrator. *See Airbnb, Inc. v. Doe*, 336 So. 3d 698, 704 (Fla. 2022); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th

[2] The AAA's 2025 Commercial Arbitration Rules can be found online: https://www.adr.org/media/sfdkznhv/2025_commercialrules_web.pdf.

Cir. 2005). The Court should thus enforce the parties' agreement and compel Plaintiff's Dispute to arbitration—including any challenge to the arbitrability of that Dispute.

Finally, even if this Court were to decide the question of arbitrability (though it should not), this case readily satisfies the three-part test of arbitrability.

*First*, the Agreement contains a valid and enforceable arbitration agreement and Plaintiff assented to that agreement, as described above.

*Second*, Plaintiff's claims are arbitrable. Plaintiff alleges that Defendants invaded his privacy and disclosed his PII and PHI when he used the App to book doctors' appointments, request referrals for other practitioners, view lab results, and communicate his PHI to address multiple sinus infections. *See* Plaintiff's Class Action Complaint [ECF 1] ("Complaint" or "Compl.") ¶ 188. These claims are arbitrable because they arise from or relate to the App and the Agreement. Indeed, the alleged interceptions and transmittals giving rise to Plaintiff's claims could only have occurred within the App's patient portal, which Plaintiff could only access by creating an account and acknowledging the Agreement.

*Third*, Defendants have not waived their right to arbitration and are making their intent to arbitrate clear early in the case. Defendants have filed this Motion as their first substantive motion. The Court has not issued any decisions on the merits of this matter nor has either party served substantive discovery or requested depositions. Defendants' contemporaneous Motion to Dismiss has been filed only in the alternative to this Motion, to be considered only in the event the Court denies this Motion and declines to compel Plaintiff to arbitrate.

For each of these reasons, the Court should compel arbitration and dismiss the Complaint.

## FACTUAL BACKGROUND[3]

### A. Plaintiff's Claims Arise Out of and Relate to the mySanitas Healthcare Application and Agreement, Which Plaintiff Incorporates into the Complaint.

Plaintiff, a Tennessee resident, alleges Defendants installed third-party "Tracking Tools" on the App, and thereby disclosed patients' PII and PHI to third parties. *See, e.g.*, Compl. ¶¶ 1, 7, 10-11, 21-24, 36, 74, 111-12, 247-48. Plaintiff alleges that Defendants designed the App to disclose unique identifiers, IP addresses, and other identifiers in violation of the Health Insurance Portability and Accountability Act ("HIPAA"), state laws, industry standards, and patient expectations. *Id*. ¶ 10. Plaintiff further alleges Defendants violated the App's Notice of Privacy Practices by disclosing Plaintiff's and Class Members' PII and PHI to Facebook, Google and "likely" other third parties without written authorization. *Id.* ¶¶ 111-112.

Plaintiff acknowledges he read and signed an acknowledgment of receipt of the App's Privacy Policy and his Complaint contains a link to the acknowledgment form, which in turn links to the Privacy Policy and to the Agreement. Compl. ¶ 193; *see also id*. ¶ 6 n.5 (providing link to App's login screen, Privacy Policy, and Agreement).[4] The Court may also consider extrinsic proof of the Agreement. *See* Legal Standard *infra*.

Plaintiff alleges he accessed the App on his phone to receive healthcare services on numerous occasions, and "most recently in December of 2023." *Id.* ¶¶ 21, 187. Plaintiff alleges he used the App "to request and book doctors' appointments for himself, request referrals to other practitioners, view lab results, as well as search for and communicated PHI related to his need for medical care for multiple sinus infections." *Id.* ¶ 188. Plaintiff alleges his "searches for and

---

[3] The facts are taken from the Complaint and the accompanying Declaration of Santiago Thovar Bermejo ("Decl."), submitted herewith and incorporated herein as Exhibit 1.

[4] In addition, federal courts frequently take judicial notice of website terms and conditions. *See, e.g.*, *Noshirvan v. Couture*, No. 2:23-CV-1218-JES-KCD, 2025 WL 1769669, at *11 (M.D. Fla. June 26, 2025); *Tatum v. X Corp*., 733 F. Supp. 3d 453, 459 (E.D. N.C. 2024).

communication of PHI and PII included his visiting specific webpages that revealed his PHI through URLs as well as his selection of a specific provider to book appointments," and "also included his insurance information, information about medications prescribed, as well as information on what conditions his appointments were for, such as sinus infection symptoms," *Id.* ¶¶ 189-190. The Complaint purports to depict a series of screen shots allegedly taken from the patient portal within the App, although Plaintiff does not allege or attribute these screen shots to himself or his sessions in the App. *See id.*, Figures 1-11 at pp. 19-26. In sum, Plaintiff's claims all arise out of or relate to allegations regarding his use of the App under the Agreement.

### B. Plaintiff Created an Account in the mySanitas Healthcare Application and Acknowledged and Agreed to the Agreement to Access the Patient Portal Giving Rise to His Claims.

To gain access to the App's patient portal and thereby to perform the tasks and to enter and view the PHI and PII alleged in the Complaint, Plaintiff created an account and login username and password for the App. (Decl., ¶¶ 5-12). As part of the account creation process, Plaintiff signed a registration form and checked boxes acknowledging he had read and agreed to the App's Privacy Policy and the Agreement's terms and conditions. (*Id.*, ¶¶ 5-12, Ex. A). Sanitas maintains records in the ordinary course of business recording whether and when users sign up for an account. (*Id.*, ¶¶ 4, 12). Plaintiff signed up for an account and accepted the Agreement for the mySanitas Healthcare Application on December 22, 2023, via the following website form:


By clicking this checkbox, I have read and accepted the Sanitas Patient Financial Policy*

Privacy Policy and Terms & Conditions acceptance.

I read and agree to the Privacy Policy.

I read and agree to the Terms and Conditions.

Signature (information entered as signature in the virtual platform)* Registration date

YOUSEF ALHINDI 12/22/2023

(*Id.*, ¶¶ 11-12, Ex. A). As shown above, when Plaintiff signed up for this account and signed his registration form, he checked a box affirming he had read the Agreement's terms and conditions. (*Id.*). The Agreement advises the user to "read carefully these Terms," not to continue using the App "[i]f You do not agree to these Terms," and that "Download and use of this App constitutes Your consent and agreement to abide by the most current version of these Terms." (*Id.*, ¶ 8, Ex. B, at 2). The Agreement further states in all capital letters:

> PLEASE READ THESE TERMS CAREFULLY AS THEY CONTAIN IMPORTANT INFORMATION REGARDING YOUR LEGAL RIGHTS, REMEDIES, AND OBLIGATIONS. THESE INCLUDE VARIOUS DISCLAIMERS, LIMITATIONS AND EXCLUSIONS, AND A CLAUSE THAT GOVERNS THE JURISDICTION AND VENUE OF DISPUTES.
>
> IN USING THIS APP YOU ARE DEEMED TO HAVE READ AND AGREED TO THESE TERMS, AND ANY INCIDENTAL DOCUMENTS AND LINKS MENTIONED SHALL BE CONSIDERED TO BE ACCEPTED JOINTLY WITH THESE TERMS. YOU AGREE TO USE THE APP ONLY IN STRICT INTERPRETATION AND ACCEPTANCE OF THESE TERMS AND ANY ACTIONS OR COMMITMENTS MADE WITHOUT REGARD TO THESE TERMS SHALL BE AT YOUR OWN RISK. THESE TERMS FORM PART OF THE AGREEMENT BETWEEN THE RESPECTIVE USERS AND US. BY DOWNLOADING AND USING THIS APP AND/OR UNDERTAKING TO RECEIVE A SERVICE BY US INDICATES YOUR UNDERSTANDING, AGREEMENT TO AND ACCEPTANCE, OF THE DISCLAIMER NOTICE AND THE FULL TERMS CONTAINED HEREIN.

(*Id.*).

Section 14 of the Agreement sets out the parties' agreed terms for "Resolution of Disputes." (*Id.*, Ex. B, at 15). Section 14.1 states: "In the event of any dispute, claim, question, or disagreement arising from or relating to this Agreement or the breach thereof (collectively "Dispute"), the parties shall use their best efforts to settle the Dispute." (*Id.*, Ex. B, at 15). The provision then sets out a three-part process for the resolution of a Dispute.

First, under Section 14.2, the parties must "consult, meet in person or by video call(s), and negotiate with each other in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution satisfactory to both parties." (*Id.*).

Second, if the consultation process fails, Section 14.3 requires mediation:

> If the parties do not resolve the Dispute pursuant to the foregoing paragraph within a period of 30 days, then, upon notice by either Party to the other, the parties agree to mediate the Dispute in good faith according to the American Arbitration Association's Commercial Mediation Procedures in Florida or in another location if mutually agreeable to the parties. The parties shall work in good faith with the mediator to attempt to complete the mediation within 60 days of such notice.

(*Id.*).

Third, if mediation does not yield a resolution, Section 14.4 requires binding arbitration:

> If Keralty[5] and You do not resolve the Dispute through mediation then, upon notice by either Party to the other, the Dispute shall be finally settled by arbitration administered by the American Arbitration Association in accordance with the provisions of its Commercial Arbitration Rules. The arbitration shall be conducted on a confidential basis. The arbitration shall be conducted before a single arbitrator mutually agreed to by the parties. Any decision or award as a result of any such arbitration proceeding shall be in writing and shall provide an explanation for all conclusions of law and fact and shall include the assessment of costs, expenses, and reasonable attorneys' fees. Any arbitration shall be conducted by an arbitrator experienced in contract and technology law, shall include a written record of the arbitration hearing, and shall be conducted in Florida or another location if mutually agreeable to the parties. An award of arbitration may be confirmed in a court of competent jurisdiction. The arbitrator shall award to one or both parties as prevailing Party on any claim or defense, if any, as determined by the arbitrator, some or all of its costs and fees in their sole discretion. "Costs and fees" mean all reasonable pre-award expenses of the arbitration, including the arbitrators' fees, administrative fees, out-of-pocket expenses such as copying and telephone, witness fees, and attorneys' fees.

(*Id.*, Ex. B, at 15-16).

The Agreement is governed by Florida law under Section 13. (*Id.*, Ex. B, at 15).

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") "establishes a 'federal policy favoring arbitration … requiring that [courts] rigorously enforce agreements to arbitrate.'" *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1192 (11th Cir. 1995) (quoting *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Creative Tile Mktg., Inc. v. SICIS Int'l. S.r.L.*, 922 F. Supp. 1534, 1538-39 (S.D. Fla. 1996) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614,

[5] The Agreement defines "Keralty" to include the owner, operator, and licensor of the Web Properties, Keralty S.A.S., and its United States special purpose vehicle subsidiaries and their affiliates, including Sanitas USA and Guidewell-Sanitas. (*See* Decl., Ex. B, at 1).

626 (1985)). This Motion to compel arbitration "is treated as a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction." *Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1228 (S.D. Fla. 2020). The Court may therefore "consider matters outside the four corners of the Complaint." *Id.* "The party opposing arbitration has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration, which is a burden not unlike that of a party seeking summary judgment." *Bhim v. Rent-A-Ctr., Inc.*, 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009) (citation and quotation marks omitted). The FAA governs "the applicability of arbitration agreements," while "state law governs issues 'concerning the validity, revocability, and enforceability of contracts generally.'" *Id.* at 1311 (quoting *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)). Here, Florida law governs under Section 13 of the Terms and Conditions. *See* Factual Background § B *supra*.

## ARGUMENT

### I. The Court Should Enforce the Agreement's Consultation and Mandatory Mediation Provisions and Dismiss This Case Because Plaintiff Failed to Comply with Any of the Agreement's Contractual Dispute Resolution Processes, Which Are Conditions Precedent to Arbitration.

Plaintiff has failed to comply with any part of the Agreement's dispute resolution provisions, which require mandatory consultation followed by mandatory mediation, both of which are conditions precedent to arbitration under Sections 14.2 and 14.3. (Decl., Ex. B at 15). "Courts favor non-binding mediation and will enforce agreements requiring non-binding mediation as a condition precedent to arbitration or litigation." *Arbea v. Itemp, Inc.*, No. 24-80376-CIV, 2024 WL 5078273, at *1 (S.D. Fla. May 20, 2024). Here, the parties' Agreement contains two conditions precedent to arbitration, both of which require the parties to "use their best efforts to settle the Dispute" prior to the commencement of arbitration proceedings. (Decl., Ex. B at 15). First, the parties must "consult, meet in person or by video call(s), and negotiate with each other

in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution satisfactory to both parties." (*Id.*). Second, only if the parties "do not resolve the Dispute pursuant to" the consultation process within 30 days, then the parties must "mediate the Dispute in good faith according to the American Arbitration Association's Commercial Mediation Procedures in Florida" or another location mutually agreeable to the parties. (*Id.*).

Plaintiff has not complied with either of these conditions precedent. Thus, Plaintiff has not satisfied the conditions precedent to commence arbitration, much less to file a lawsuit in this Court. Under these circumstances, the appropriate remedy is for this Court to enforce the Agreement's dispute resolution terms and to dismiss the Complaint. "Where the parties' agreement requires mediation as a condition precedent to arbitration or litigation [and no such mediation has taken place], the complaint must be dismissed." *3–J Hospitality, LLC v. Big Time Design, Inc.*, No. 09-61077-CIV, 2009 WL 3586830, *2 (S.D. Fla. Oct. 27, 2009); *see also Arbea*, 2024 WL 5078273, at *1 (same); *Brosnan v. Dry Cleaning Station Inc.*, No. C-08-02028 EDL, 2008 WL 2388392, *1 (N.D. Cal. June 6, 2008) ("Failure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal."); *Darling's v. Nissan North America, Inc.*, 117 F. Supp. 2d 54, 61 (D. Me. 2000) (where statute required plaintiff to make written demand for nonbinding mediation before filing suit, and plaintiff did not comply, proper remedy was to dismiss claim without prejudice, allowing plaintiff to refile upon fulfilling mediation requirement).

## II. The Court Should Compel Arbitration Because the Parties Have a Valid Agreement to Arbitrate and Agreed to Delegate the Issue of Arbitrability to the Arbitrator.

Even if Plaintiff were to comply with the Agreement's consultation and mandatory mediation provisions, which he has not, he has contractually agreed to arbitrate his claims and should be compelled to arbitrate. There is no dispute that Plaintiff and Defendants entered into the Agreement, which contains a valid and enforceable agreement to arbitrate. That ends this Court's

inquiry, because the Agreement delegates the power to decide gateway questions of arbitrability to the arbitrator, and therefore the Court should compel arbitration even if Plaintiff contests arbitrability, because that is a matter for the arbitrator to decide.

**A. The Agreement Is a Valid Agreement to Arbitrate.**

The "threshold question of whether an arbitration agreement exists at all" is a matter of contract law to which state law applies. *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016). Here, there is no dispute that the Agreement for the App contained an arbitration clause, and Plaintiff acknowledged he read and agreed to the Terms and Conditions of the Agreement to create an account and login to the patient portal. (Decl. ¶¶ 5-12, Exs. A & B). Plaintiff's claims expressly arise out of his activity on the patient portal and the alleged resulting transmittal of Plaintiff's PII or PHI to third parties. *See* Compl. ¶¶ 21, 187-190. Because the thrust of Plaintiff's allegations arise out of and relate to activities that could only occur while Plaintiff was logged into the patient portal, and Plaintiff acknowledged and agreed to the mandatory arbitration clause and the other Terms and Conditions of the Agreement to open an account and log into the patient portal, Plaintiff necessarily entered into a valid arbitration agreement.

Plaintiff expressly manifested his consent to the arbitration agreement upon signing the Agreement in a clickwrap agreement. As the court explained in *In Vitacost.com*, *Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. Dist. Ct. App. 2017) the inquiry in electronic contract formation cases is whether a user was on notice of and manifested assent to the contract's terms. *Vitacost* described two types of agreements: "A 'clickwrap' agreement occurs when a website directs a purchaser to the terms and conditions and requires consumer to click a box to acknowledge that they have read those terms and conditions." *Id*. "A 'browsewrap' agreement occurs when a website merely provides a link to the terms and conditions and does not require the consumer to click an

acknowledgement before being able to finish a transaction. The purchaser can complete the transaction without visiting the page containing the terms and conditions." *Id.*

Here, Plaintiff's acknowledgment and consent to the clickwrap agreement constitutes binding notice. Because his acknowledgment "require[d] the user to physically manifest assent, the user is 'said to be put on inquiry notice of the terms assented to." *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1302 (M.D. Fla. 2018); *see also Vitacost,* 210 So. 3d at 761 ("Clickwrap' agreements are generally enforceable."). Numerous Florida courts have enforced binding arbitration clauses when they were presented in clickwrap agreements concluding that they are *per se* evidence that an arbitration provision was conspicuously presented and that the user expressly manifested assent. *See*, *e.g*., *Massage Envy Franchising, LLC v. Doe*, 339 So. 3d 481, 485 (Fla. Dist. Ct. App. 2022) (holding the fact that plaintiff failed to read the terms of use agreement was of "no consequence" and that the binding arbitration provision applied) (quoting *Sapp v. Warner*, 141 So. 124, 127 (Fla. 1932)) ("[A] person has no right to shut his eyes or ears to avoid information and then say that he has no notice."); *Healy v. Honorlock Inc.*, 609 F. Supp. 3d 1294, 1296-1298 (S.D. Fla. 2022) (compelling arbitration where plaintiff had to "click a checkbox to agree to [defendant's] hyperlinked Terms of Service" which contained an arbitration clause); *Bachewicz v. JetSmarter*, *Inc*., No. 18-CV-62570, 2019 WL 1900332, at *2-5 (S.D. Fla. Apr. 29, 2019) (S.D. Fla. Apr. 29, 2019) (compelling arbitration pursuant to clickwrap agreement) (Bloom, J.); *Massage Envy Franchising*, 339 So. 3d 481, 485 (Fla. Dist. Ct. App. 2022) (reversing trial court and compelling arbitration "because the [terms of use] . . . was attached via hyperlink, and Doe was directed to give her assent to the [terms of use] by checking the 'I agree' box, [therefore] Doe was put on sufficient notice of its terms and conditions, including the binding arbitration

condition, and that she manifested her assent to those terms and conditions by affirmatively clicking the box where indicated, thus creating a valid agreement").

The same result holds here: Plaintiff was unequivocally on notice of and acknowledged he had read and agreed to the Agreement's arbitration clause. Thus, a valid arbitration agreement exists between Plaintiff and Defendants.

**B. Any Gateway Dispute as to Arbitrability Under the Agreement or Enforceability of the Agreement Is for the Arbitrator to Decide.**

The existence of a valid arbitration agreement between the parties ends this Court's inquiry, because any other dispute as to the arbitrability of Plaintiff's claims or enforceability of the Agreement is for the arbitrator to decide. In *Airbnb,* the Florida Supreme Court found that incorporating AAA Rules into an electronically-signed "clickwrap" agreement like the Agreement here means the parties intend to delegate the power to decide arbitrability to the arbitrator:

> The Terms of Service incorporate the AAA Rules, and the express language in the AAA Rules empowers the arbitrator to decide arbitrability. Accordingly, consistent with the persuasive and unanimous federal circuit court precedent, we conclude that incorporation by reference of the AAA Rules that expressly delegate arbitrability determinations to an arbitrator clearly and unmistakably evidences the parties' intent to empower an arbitrator to resolve questions of arbitrability.

336 So. 3d at 704. That ruling matches the Eleventh Circuit's consistent approach. *See In re Checking Acct. Overdraft Litig.*, 856 F. App'x 238, 244-45 (11th Cir. 2021); *Terminix Int'l Co., LP*, 432 F.3d at 1332 (holding that the parties "clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid.").

Here, just as in *Airbnb*, Section 14.4 of the Agreement incorporates the AAA Commercial Arbitration Rules. The Commercial Arbitration Rules, in turn, state in pertinent part: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." AAA Commercial

Arbitration Rules, Rule R-7(a). Thus, even if Plaintiff intends to contest the arbitrability of the claims asserted in his Complaint or the enforceability of the Agreement's arbitration provision, the Court should nevertheless compel arbitration in the first instance for the arbitrator to decide this gateway question consistent with the parties' Agreement.

## III. The Court Should Compel Arbitration Because Plaintiff's Complaint Asserts Disputes That Are Subject to Mandatory Arbitration Under the Clear and Unambiguous Terms of the Parties' Agreement.

Even if the parties had not delegated the question of arbitrability to the arbitrator, the Court should nonetheless compel arbitration because the parties' Agreement is clear and unambiguous and mandates arbitration of Plaintiff's claims. Section 2 of the FAA[6] mandates that binding arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA expresses a strong public policy favoring arbitration and requires courts to "rigorously enforce" arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). The FAA requires a court to compel arbitration where the parties have a valid arbitration agreement and the claims asserted fall within the agreement's scope. *Lambert v. Austin Ind*., 544 F.3d 1192, 1195 (11th Cir. 2008). Any doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25 (1983); *see also iDoc Holdings, Inc. v. Goethals*, No. 21-21540, 2021 WL 2895635, at *3 (S.D. Fla. July 9,

[6] Defendants maintain that the FAA governs the arbitration clause and related provisions of the Agreement. The FAA provides for the enforceability of any "contract evidencing a transaction involving commerce." 9 U.S.C. § 2; *see also Paladino v. Avnet Computer Techs*., *Inc*., 134 F.3d 1054, 1061 (11th Cir. 1998). Here, the conduct alleged involved a transaction traversing interstate boundaries. Regardless, the Agreement is also enforceable to compel arbitration under the Florida Arbitration Code ("FAC"). *See Shotts v. OP Winter Haven, Inc*., 86 So. 3d 456, 464 (Fla. 2011) ("[I]n a hearing on a motion to compel arbitration, the inquiry follows the same three-step process regardless whether the inquiry is conducted under the FAC or the FAA.") (citing *Seifert v. U.S. Home Corp*., 750 So. 2d 633 (Fla. 1999)).

2021) (Bloom, J.) ("The presence of a valid arbitration provision raises a strong presumption of enforcement.") (citation omitted).

The Court considers three factors in deciding a motion to compel arbitration: (1) whether a valid agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived. *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010) *aff'd*, 433 F. App'x 842 (11th Cir. 2011). Here, all three factors are met.

**A. The Agreement's Mandatory Arbitration Clause Is Valid and Binding.**

As discussed above, there is no dispute as to the existence of a valid and binding arbitration agreement between the parties, as reflected by Plaintiff's manifestation of his assent to the Agreement through his clickwrap electronic signature. *See* Argument § II.A *supra*.

**B. Plaintiff's Claims Are Within the Scope of the Arbitration Clause.**

Plaintiff asserts seven claims: (1) violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), et seq.; (2) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et seq.; (3) invasion of privacy – intrusion upon seclusion; (4) breach of confidence; (5) negligence; (6) breach of implied contract; and (7) unjust enrichment. Each of these claims are well within the scope of the Agreement's broadly-worded arbitration clause and related provisions in Section 14.

Section 14.1 expressly defines arbitrable "Disputes" as including "any dispute, claim, question, or disagreement arising from or relating to this Agreement or the breach thereof." (Decl., Ex. B, at 15). Section 1.1 of defines "Agreement" as "these Terms and Privacy Policy, together with all Exhibits and other policies published on the mySanitas App." (Decl., Ex. B, at 2). And Section 14.4 provides that, if the consultation and mediation dispute resolution processes fail to resolve a Dispute, the "Dispute shall be finally settled by arbitration administered by the American Arbitration Association in accordance with the provisions of its Commercial Arbitration Rules."

(Decl., Ex. B, at 15-16). Thus, under the plain language of the Agreement, the present Disputes arising from or relating to Plaintiff's use of the App under the Agreement, including Plaintiff's various claims that Defendants violated Plaintiff's statutory and common law privacy rights and unlawfully disclosed his PII and PHI when he logged into the patient portal of the App, are governed by the arbitration provision.

Questions regarding whether a dispute must be arbitrated are to be answered "with a healthy regard for the federal policy favoring arbitration," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24–25; *see also AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986) ("'[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'") (citations omitted); *Int'l Bhd. of Elec. Workers Sys. Council U-4 v. Fla. Power & Light Co.*, 627 F. App'x 898, 901 (11th Cir. 2015) ("The presumption of arbitrability is 'particularly applicable' where an arbitration clause is broadly worded.") (citations omitted). An arbitration provision that, as in this case, "requires arbitration for claims or controversies 'arising out of or relating to' the subject contract" are considered "broad in scope," and the inclusion of the words "relating to" in the arbitration provision "broadens the scope of an arbitration provision to include those claims that are described as having a 'significant relationship' to the contract—regardless of whether the claim is founded in tort or contract law." *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013) (quoting *Seifert v. U.S. Home Corp.*, 750 So.2d 633, 637-38 (Fla. 1999)).[7]

[7] Indeed, if there were any questions regarding the arbitrability of this dispute (there are not), that question would be for the arbitrator to resolve, in accordance with the Agreement's delegation clause. *See* Argument § II.B *supra*.

Here, a "significant relationship" exists between Plaintiff's claims and the Agreement because each of Plaintiff's claims "presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract" and "emanates from an inimitable duty created by the parties' unique contractual relationship." *Jackson*, 108 So. 3d at 593. In this case, the alleged transmittals of PII or PHI at issue occurred solely by virtue of Plaintiff's entry into the Agreement to open an account and gain access to the App's patient portal, where the asserted invasion of Plaintiff's privacy purportedly took place. *See* Compl. ¶¶ 21, 187-190. That alone is enough to satisfy the second element of arbitrability, but Plaintiff goes further by incorporating the Agreement by reference in his Complaint, together with the App's Privacy Policy and HIPAA Notice of Privacy Practices, as the basis for Plaintiff's claims. *See id*. ¶¶ 6 n.5, 193; *see also id*. ¶¶ 103-113 & n.26, 214, 262, 269. Thus, Plaintiff's facial allegations squarely place his claims within the scope of the Agreement's arbitration clause.

Because the Agreement contains a binding arbitration provision that encompasses Plaintiff's claims, the Court should direct Plaintiff to comply with the Agreement's dispute resolution provisions and compel arbitration following Plaintiff's satisfaction of the contractual prerequisites for arbitration, i.e. consultation and mediation. *See* 9 U.S.C. § 4; *see also Dean Witter Reynolds*, 470 U.S. at 218 ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (citations omitted)).

**C. Defendants Have Not Waived Their Right to Arbitration.**

Defendants are asserting their right to arbitration at the earliest stages of this case, and have not waived that right. "'All questions about waivers of arbitration should be construed in favor of arbitration rather than against it.'" *Falvo v. Atl. Specialty Ins. Co.*, No. 8:24-CV-01412-WFJ-AEP, 2025 WL 278022, *4 (M.D. Fla. Jan. 23, 2025) (citation omitted). "To decide whether a waiver

has occurred, the court focuses on the actions of the person who held the right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022). The Court should not consider prejudice. *Id.* at 417-19. Rather, the focus of the inquiry should be: Did Defendants "knowingly relinquish the right to arbitrate by acting inconsistently with that right?" *Id*. at 419; *see also Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355, 1369 (11th Cir. 2023) ("To determine whether a party has defaulted for [the FAA's] Section 3 purposes, a court must decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right.") (citation and internal quotation marks omitted).

Here, Defendants have moved to compel arbitration as their first substantive motion. The Court has not issued any decisions on the merits of this matter nor has either party served substantive discovery or requested depositions. This is not a case in which Defendants have litigated on the merits for multiple months or filed a dispositive motion before moving to compel arbitration. *Cf. Gaudreau v. My Pillow, Inc.*, No. 6:21-CV-1899-CEM-DAB, 2022 WL 3098950, at *8 (M.D. Fla. July 1, 2022) (finding waiver where defendant MyPillow "answered not one, but two complaints filed by Guadreau against it without mentioning its purported right to arbitrate" and "only sought to vindicate its purported right to arbitrate after actively participating in this litigation for eight months"). Defendants are filing a companion Motion to Dismiss together with this Motion, to be considered in the alternative only after the Court decides this Motion and only if the Court declines to compel arbitration. That request for alternative relief simply promotes efficiency and is not a waiver. *See Machado v. Lab. Ready Se., Inc.*, No. 1424234CIVLENARDGOOD, 2015 WL 6829061, at *4 (S.D. Fla. Nov. 6, 2015) (collecting cases and holding that the "mere filing of a motion to dismiss before filing a motion to compel arbitration

does not constitute a waiver of Labor Ready's contractual arbitration rights."). Accordingly, Defendants have not waived their right to arbitration.

## CONCLUSION

For the foregoing reasons, Defendants ask the Court to compel arbitration, dismiss the Complaint, and grant any other relief that the Court deems necessary or appropriate.

## REQUEST FOR HEARING

Defendants respectfully submit that a hearing and oral argument on the foregoing issues may assist the Court in evaluating the grounds presented to compel compliance with the parties' dispute resolution terms and arbitration agreement, and therefore request a hearing on this Motion to compel arbitration and compliance with the parties' agreed dispute resolution process.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a), undersigned counsel hereby certifies that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues.

**COUNSEL FOR DEFENDANTS**

By: *Eva M. Spahn*

Eva M. Spahn
Florida Bar No. 92063
Angelika Hunnefeld
Florida Bar No. 70246
**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Fax: (305) 579-0717
Eva.Spahn@gtlaw.com
HunnefeldA@gtlaw.com

Gregory E. Ostfeld
(*pro hac vice pending*)
Meredith R. Mandell
(*pro hac vice pending*)
**GREENBERG TRAURIG, LLP**

360 North Green Street, Suite 1300
Chicago, IL 60607
(312) 456-8400
ostfeldg@gtlaw.com
Meredith.Mandell@gtlaw.com

*Attorneys for Defendants, Sanitas USA, Inc. and Guidewell-Sanitas I, LLC*

**CERTIFICATE OF SERVICE**

I certify that on October 7, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

By: *Eva M. Spahn*